**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JAMES R. MCCULLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-07-546-HE** |
| ) | |
| **OKLAHOMA DEPARTMENT OF** ) | |
| **CORRECTIONS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C.

§ 1983, alleging a violation of his constitutional rights.  United States District Judge Joe

Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended

that the complaint be dismissed upon filing.

By this action, Plaintiff sues the Oklahoma Department of Corrections ("DOC"),

DOC Correctional Officer Shelby, and Haskell Higgins, Warden of the Howard McLeod

Correctional Center ("HMCC") where Plaintiff was incarcerated at the time of the events

made the basis of this suit.  Complaint, pp. 1-2.  Plaintiff alleges that on December 19,

2006, he and 45-50 other inmates were assigned to a security work crew detail under the

supervision of Officer Shelby.  According to Plaintiff, Officer Shelby ordered the inmates

assigned to the security work crew into the back of a truck for transport to the day's

worksite.  Plaintiff avers that there was not enough room in the truck for all of the

inmates but that Officer Shelby told them to "make room" so that everyone could get in.

Id. at 2.

Plaintiff describes the truck as having two "swing open gates" at its rear that were secured by a "defective" latch.  Id.  He contends that after he and the other inmates got into the truck, Officer Shelby drove the truck "fast on windy dirt roads" until he "came to a small cement bridge that crossed a river.  Upon crossing[,] [Officer] Shelby romped on the accelerator, causing a surge of inmates to the back of the truck . . . [T]his [surge] caused the gates of the truck to swing open and threw 6 inmates[,] including [Plaintiff,] from the vehicle."  Id. at 2-2a.[1]

As a result of his fall from the truck, Plaintiff claims to have been "knocked out from the severe trauma to the head" and to have sustained injuries that required several weeks of medical treatment.  Id. at 2a.  After Plaintiff recovered from his injuries, he was reassigned to the security work crew detail but refused to comply with the assignment. Plaintiff's refusal was documented in two misconduct reports and he was disciplined with placement in a segregated housing unit and the loss of earned time credits.  See id. at 4b-5.

In Counts I through IV, Plaintiff contends that Officer Shelby's conduct violated certain Oklahoma statutes and provisions of the Oklahoma constitution by his negligence and unsafe manner in operating the vehicle.  Specifically, Plaintiff avers that Officer Shelby's conduct amounted to "negligence" and "reckless endangerment" in that Officer Shelby drove unsafely and carried "way to[o] many inmates" in the truck.  Id. at 3-4.

---

[1] Plaintiff has inserted unnumbered pages in between the pre-numbered pages of the § 1983 complaint form.  The undersigned refers to the first page inserted after pre-numbered page 2 as page 2a, and the second as page 2b, and so forth.

Plaintiff also contends that his reassignment to the security work crew detail violated the Oklahoma Governmental Tort Claims Act.  Id. at 3.

In Count V, Plaintiff alleges that Officer Shelby's actions also violated DOC rules and regulations designed to protect inmates from "personal abuse, corporal punishment, **personal injury**, unclean conditions, property damage and **harassment**."  Id. at 4a (emphasis in original).  Plaintiff complains in Count VI that his reassignment to the security work crew detail violated DOC rules and regulations giving inmates the "right to be treated respectfully, impartially and fairly by all persons" because the work assignment caused him to suffer "emotional trauma."  Id.

Finally, in Count VIII,[2] Plaintiff contends that his reassignment to the security work crew violated his state and federal constitutional rights to be free from cruel and unusual punishment.  Id. at 4b.  He also claims that the injuries caused by Officer Shelby's "negligence" amounted to the infliction of cruel and unusual punishment.  Id. Plaintiff seeks damages, restoration of earned time credits,[3] and injunctive relief.  Id. at 5-5a.

---

[2] Plaintiff has not included a Count VII in his complaint.

[3] The sole federal remedy for a prisoner seeking restoration of earned time credits is a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 490 (1973).  Consequently, claims for the restoration of earned time credits are not cognizable in a § 1983 suit.  See Taylor v. Wallace, 931 F.2d 698, 700 n.1 (10th Cir. 1991).  However, the undersigned does not recommend construing the complaint as a petition for a writ of habeas corpus because of the potentially prejudicial consequences that Plaintiff may suffer. See, e.g., Richards v. Bellmon, 941 F.2d 1015, 1019 n.3. (10th Cir. 1991) (rejecting construction of a pro se § 1983 complaint to include a habeas claim because such treatment "borders on advocacy and could interfere with a possible tactical choice by the plaintiff.").

3

I. SCREENING REQUIREMENT

Courts are obliged to screen prisoner complaints "seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If review of a prisoner's complaint reveals that it "is frivolous, malicious, . . . fails to state a claim upon which relief may be granted . . . or seeks monetary relief from a defendant who is immune from such relief," the complaint must be dismissed. Id. § 1915A(b). Similarly, a court is required to dismiss an inmate action brought "with respect to prison conditions" if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1).

The undersigned has screened the complaint because Plaintiff is an inmate bringing suit with respect to prison conditions and seeks redress from a governmental entity and its employees. As that screening revealed several deficiencies, it is recommended that the complaint be dismissed upon filing.

II. DISCUSSION

A.      VENUE

As § 1983 contains no specific venue requirements, the general venue statute, 28 U.S.C. § 1391(b), governs inmate § 1983 suits. See Anaeme v. Florida, No. 05-2051, 169 Fed. Appx. 524, 528 (10th Cir. Mar. 2, 2006)[4]; Coando v. Payne, No. 04-8115, 127 Fed. Appx. 418, 419 (10th Cir. Mar. 29, 2005). Section 1391(b) provides:

---

[4] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or . . . (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

For purposes of establishing proper venue in suits against public officials, the general rule is that a defendant's residence is the district where he performs his official duties. Fla. Nursing Home Ass'n v. Page, 616 F.2d 1355, 1360 (5th Cir. 1980), rev'd on other grounds sub nom. Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147 (1981).

The only defendant who is alleged to reside in this district is the DOC, but as noted below, the DOC is entitled to immunity.  Plaintiff has not shown that the two individual Defendants, Warden Higgins and Officer Shelby, reside in this district.  Since Plaintiff's complaint is based upon events that occurred during his confinement at HMCC in Atoka County, Oklahoma, which is located in the Eastern District of Oklahoma, it appears that venue is not proper.  Complaint, pp. 2-5; 28 U.S.C. § 116(b).

When an action is filed in an improper venue, 28 U.S.C. § 1406(a) gives a district court the option to "dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  It is also noted that the Court may address propriety of a chosen venue sua sponte so long as the plaintiff is given an opportunity to address the issue.  See Stjernholm v. Peterson, 83 F.3d 347, 349 (10th Cir. 1996).  Here, the undersigned may consider whether Plaintiff's chosen venue is proper because Plaintiff will have an opportunity to be heard on the issue by timely

5

filing an objection to this Report and Recommendation.  <u>See</u> <u>Smith v. Dorsey</u>, No. 93-2229, 1994 WL 396069, at *3 (10th Cir. July 29, 1994) (noting there is "no due process problem" when a magistrate judge raises a procedural bar since there is an opportunity to address the matter by objecting to the report and recommendation).

As will be discussed below, the complaint does not state a § 1983 claim against the Defendants and, thus, the case should be dismissed rather than transferred to the proper venue.

### B.  ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides states with sovereign immunity from suit in federal court unless the state unmistakably waives its immunity or Congress explicitly abrogates the immunity by statute.  <u>Welch v. Tex. Dep't of Highways and Pub. Transp.</u>, 483 U.S. 468, 473-74 (1987).  Oklahoma has not waived its Eleventh Amendment immunity.  <u>Ramirez v. Okla. Dep't of Mental Health</u>, 41 F.3d 584, 589 (10th Cir. 1994), <u>overruled on other grounds by</u> <u>Ellis v. Univ. of Kan. Med. Ctr.</u>, 163 F.3d 1186, 1194-97 (10th Cir.1998); <u>see also</u> Okla. Stat. tit. 51, §§ 152.1, 153 (adopting doctrine of sovereign immunity for state of Oklahoma, its political subdivisions and its employees acting with the scope of their employment).  Further, Congress did not abrogate the sovereign immunity of states by enacting 42 U.S.C. § 1983.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979).  As an "arm of the state," the Oklahoma Department of Corrections shares in Oklahoma's Eleventh Amendment immunity from suit in federal court.  <u>Eastwood v. Dep't of Corr.</u>, 846 F.2d 627, 631-32 (10th Cir. 1988).

Morever, state officials sued in an official capacity are also entitled to Eleventh Amendment immunity from suits seeking retrospective relief such as monetary damages or a declaratory judgment.  See Edelman v. Jordan, 415 U.S. 651, 665 (1974) (noting that a suit for damages against a state official in an official capacity is effectively a suit against the state); Johns v. Stewart, 57 F.3d 1544, 1552-53 (10th Cir. 1995).  In contrast, a state's Eleventh Amendment immunity does not bar a suit seeking prospective equitable relief against a state official sued in an official capacity from proceeding in federal court.  ANR Pipeline Co. v. LaFaver, 150 F.3d 1178, 1188 (10th Cir. 1998), abrogated on other grounds as recognized in Hill v. Kemp, 478 F.3d 1236, 1259 (10th Cir. 2007).  However, where a state agency has been sued in federal court, the state's sovereign immunity bars the suit regardless of the type of relief sought.  Id. at 1187.

Eleventh Amendment immunity from suit in federal court deprives the federal courts of jurisdiction over claims asserted against a state.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.8 (1984).  It is thus appropriate for a federal district court to consider a state's Eleventh Amendment immunity sua sponte because the issue implicates the court's jurisdiction.  Johns, 57 F.3d at1552.

The DOC is entitled to Eleventh Amendment immunity from all of Plaintiff's claims in this Court because it is an arm of the State of Oklahoma which has not waived its sovereign immunity from suit in federal court.  See Eastwood, 846 F.2d at 632.  Further, to the extent Warden Higgins and Officer Shelby are sued in their official capacity, they are entitled to Eleventh Amendment immunity from Plaintiff's claims for retrospective relief.  See LaFaver, 150 F.3d at 1188.  As the Court lacks jurisdiction over

the claims asserted against the DOC, it should dismiss them.  See Pennhurst, 465 U.S. at 99 n.8.   Further, the Court should dismiss Plaintiff's claims for damages from Officer Shelby and Warden Higgins to the extent they are sued in their official capacities.

### C.   PERSONAL PARTICIPATION

Personal participation is an essential element of a § 1983 claim.  Bennett v Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976); see also Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").   As a result, a supervisor incurs no § 1983 liability for a subordinate's conduct that results in the deprivation of a constitutional right unless an "affirmative link" exists between the deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.  Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988).

Plaintiff has not alleged that Warden Higgins and Officer Shelby were personally involved in the alleged constitutional deprivation made the basis of the complaint. Indeed, Plaintiff has not explained Warden Higgins' connection to the events forming the basis of the suit whatsoever, let alone alleged facts showing an "affirmative link." See Complaint, pp. 2-5.  The Warden's supervisory authority over Officer Shelby and HMCC is insufficient to support § 1983 liability.  See Ware v. Unified Sch. Dist. No. 492, 902 F.2d 815, 819 (10th Cir. 1990) ("liability under section 1983 cannot rest upon the doctrine of respondeat superior.").  Thus, Plaintiff has failed to sufficiently allege Warden Higgins' personal participation.

Similarly, Plaintiff's allegations do not connect Officer Shelby to a valid *constitutional* claim.  Plaintiff contends that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was reassigned to the security work crew detail after he recovered from his injuries.  See Complaint, p. 4b.  He contends that, in light of the seriousness of his injuries, it was cruel and unusual punishment to require him to return to that work assignment.  Assuming for the moment that this would support an Eighth Amendment claim, Plaintiff has not alleged that Officer Shelby was involved in the decision to reassign him to the security work crew.  See id.  Thus, Plaintiff has failed to allege facts showing Officer Shelby's personal participation in bringing about the alleged constitutional deprivation.[5]

For these reasons as well, the complaint fails to state a constitutional claim and should be dismissed upon filing.

### D.    SUPPLEMENTAL CLAIMS

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Consequently, to establish a § 1983 claim, a plaintiff must allege the deprivation of a federally protected right under color of state law.  Marland v. Heyse, 315 F.2d 312, 314

---

[5] Plaintiff's allegation that his injuries themselves, alleged to have been caused by Officer Shelby's "negligence," amount to the infliction of cruel and unusual punishment does not state a claim for § 1983 relief because "a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property" does not amount to a constitutional violation.  See, e.g., Daniels v. Williams, 474 U.S. 327, 328 (1986) (emphasis in original); see also Estelle v. Gamble, 429 U.S. 97, 105 (1976) (requiring the establishment of "deliberate indifference" to state an Eighth Amendment claim).

(10th Cir. 1963).  A violation of state law alone does not give rise to a federal claim under § 1983.  See Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994).  Nor does § 1983 relief generally lie for the alleged violation of a prison regulation.  Trujillo v. Williams, 465 F.3d 1210, 1214 n.2 (10th Cir. 2006).

In Counts I through VI, Plaintiff alleges violations of several Oklahoma statutes, state constitutional provisions, and DOC rules and regulations, none of which provide a sufficient basis for § 1983 relief.  To the extent Plaintiff relies upon the alleged violations of state law and DOC rules and regulations as a basis for § 1983 relief, he has failed to  state a claim.  See Marland, 315 F.2d at 314.

A federal district court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Tonkovich v. Kan. Bd. of Regents, 254 F.3d 941, 945 (10th Cir. 2001) (affirming dismissal of state law claims where plaintiff's § 1983 claims had all been dismissed and no other basis for federal court jurisdiction remained).  It is appropriate to decline to exercise jurisdiction over supplemental state law claims joined with a dismissed federal claim if the litigation is in an early phase and no reason exists to retain jurisdiction over the state law claims.  See Carnegie- Mellon Univ. v. Cohill, 484 U. S. 343, 350 (1988) (finding that when federal-law claims have been eliminated from a lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice).

For the aforementioned reasons, Plaintiff's federal claim as set forth in Count VIII should be dismissed.  Because this litigation is in an early phase and no reason to retain jurisdiction over Plaintiff's supplemental state law claims exists, the Court should decline to exercise supplemental jurisdiction over these claims as stated in Counts I through VI and dismiss them without prejudice.  See, e.g., Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1139 (10th Cir. 2004) (approving of district court's dismissal without prejudice of supplemental state law after district court properly dismissed federal claims).

## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's only constitutional claim, Count VIII, be dismissed based upon Eleventh Amendment immunity and lack of personal participation and that Counts I through VI be dismissed without prejudice as supplemental state law claims.  Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by October 3, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  The Clerk of the Court is directed to electronically forward a copy of this Report and Recommendation to the Attorney General for the State of Oklahoma on behalf of the Defendants at fhc.docket@oag. state.ok.us.  This Report and

Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 13th day of September, 2007.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE